THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEILANI WRIGHT,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>BELFOR USA GROUP, INC.,<br><br>　　　　　　　Defendant. | CASE NO. C24-0907-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's partial motion to dismiss the first amended complaint ("FAC") (Dkt. No. 25). Having thoroughly considered the briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

I.   BACKGROUND

This is an employment dispute between Plaintiff Leilani Wright and her former employer, Belfor USA Group, Inc. ("Defendant"). (Dkt. No. 17 at 1.) The Court previously dismissed several of Plaintiff's claims with leave to amend: defamation, failure to accommodate, and violation of the Wage Rebate Act. (*Id*. at 8.) Plaintiff then timely filed her FAC, wherein she dropped her defamation claim entirely and declined to reallege violation of the Wage Rebate Act but realleged failure to accommodate under the Washington Law Against Discrimination

("WLAD"). (*See* Dkt. No. 22 at 8–13.)

The FAC largely realleges the same facts as the original complaint, albeit more concisely and succinctly. From 2011 to 2021, Plaintiff was an employee for Defendant. (Dkt. No. 22 at 2, 8.) Plaintiff alleges a host of misconduct during this time. For instance, early in her tenure, Plaintiff was unknowingly drugged at a team barbecue. (*Id*. at 2.) Plaintiff also endured "profanity, belittling, and public verbal tirades" as well as sexual assault and harassment from various supervisors. (*Id*. at 3.) In June 2017, Plaintiff sustained an "industrial" injury. (*Id*. at 5.) At the time, Plaintiff hoped it would resolve on its own; instead, she exacerbated the injury after engaging in additional work assignments, which led her to seek medical attention and file a worker's compensation claim in March 2018. (*Id*. at 5–6.) Plaintiff then received extensive medical attention. (*Id*. at 6.) After Plaintiff's medical provider cleared her for work in late 2019, Defendant presented her with an offer of employment letter, which outlined "light-duty office tasks" and other accommodations for her physical restrictions. (*Id*.) Plaintiff appears to have excelled in this new role, to the point where her supervisor emphasized her "exceptional performance, stating that she outperformed her predecessors by a significant margin" and praised her "exemplary work ethic and the positive impact it had." (*Id*. at 7.) Nevertheless, in June 2021, Defendant terminated Plaintiff due to its inability "to accommodate [Plaintiff's] permanent restrictions resulting from her industrial injury." (*Id*. at 8.)

Now, in addition to realleging failure to accommodate under the WLAD, Plaintiff also realleges unlawful retaliation in response to Plaintiff's worker's compensation request; discrimination based on age, gender, and disability; unlawful retaliation in response to Plaintiff's report of sexual assault and gender discrimination; unlawful retaliation in response to Plaintiff's WLAD claim; and wage theft. (*See id*.) Defendant moves to dismiss Plaintiff's claims of unlawful retaliation in response to a worker's compensation request (Count I) and failure to

accommodate under the WLAD (Count V). (*See generally* Dkt. No. 25.)[1]

## II.   DISCUSSION

### A.   Legal Standard

Dismissal is proper when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim is facially plausible when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In turn, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. As such, a plaintiff must provide grounds for their entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

### B.   Common Law Retaliation

Defendant moves to dismiss Plaintiff's common law tort claim of retaliatiory discharge for filing a worker's compensation claim. (Dkt. No. 25 at 7.) Under Washington common law, a prima facie retaliation claim requires the Plaintiff to show:

(1) that he or she exercised the statutory right to pursue workers' benefits under

---

[1] Defendant also requests that the Court strike Plaintiff's untimely response to the motion to dismiss. (*See* Dkt. No. 27 at 4.) While the Court is disappointed in Plaintiff's failure to comply with the local rules, *see* LCR 7(d)(4), and failure to seek the Court's leave to late-file her response, *see* LCR 7(g), it will still consider her submission just this once. In doing so, the Court emphasizes its strong preference for disposing of motions on their merits. However, the Court cautions Plaintiff that any future failures to file timely submissions or to seek the Court's permission to late-file will result in harsher consequences. The Court also recognizes that this decision may appear inequitable and prejudicial to Defendant on its face. *See Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (explaining factors for a court to consider when assessing whether to accept a party's late-filed materials). However, such inequities and prejudice are offset by the fact that, even after considering Plaintiff's late-filed response, the Court still finds in favor of Defendant's motion to dismiss (Dkt. No. 25) on its merits, and not because of a procedural defect.

> RCW Title 51 or communicated to the employer an intent to do so or exercised any other right under RCW Title 51; (2) that he or she was discharged; and (3) that there is a causal connection between the exercise of the legal right and the discharge, i.e., that the employer's motivation for the discharge was the employee's exercise of or intent to exercise the statutory rights.

*Wilmot v. Kaiser Aluminum & Chem. Corp.*, 821 P.2d 18, 28–29 (Wash. 1991). As for the third and final element (causation), Washington courts hold that a plaintiff presumptively satisfies the element by showing that she filed a workers' compensation claim, that the employer had knowledge of the claim, and that the employee was discharged. *Id.* at 29. The employer may, of course, rebut this presumption. *See id*. Plaintiff contends she is entitled to this rebuttable presumption. (*See* Dkt. No. 22 at 9.) Defendant argues that Plaintiff's own allegations necessarily demonstrate that, in fact, she has not established the presumption. (*See* Dkt. No. 25 at 7–8.) The Court agrees.

Even if a plaintiff meets the above-laid requirements for establishing the rebuttable presumption, courts will still look to the length of time that has lapsed between the employee's protected activity and her alleged adverse employment action to determine whether the presumption of causality survives. *See Wilmot*, 821 P.2d at 29. That is, the longer the gap, the less likely it is that the employer acted with improper motive. *See id*. In fact, where, as here, a plaintiff relies solely on the temporal proximity between the protected act and the adverse employment action to establish causation, the temporal proximity must be "very close." *Neely v. Boeing Company*, 2019 WL 2178648, slip op. at 6 (W.D. Wash. 2019) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) and citing *Wilmot*, 821 P.2d at 29). For instance, the Supreme Court held that an adverse action which took place 20 months after the employee's protected activity suggested "no causality at all." *Breeden*, 532 U.S. at 273–74 (2001). A Washington state appellate court similarly determined that a 27-month delay suggested no connection. *Rainey v. Washington State Horse Racing Comm'n*, 2006 WL 2131741, slip op. at 11 (Wash. Ct. App. 2006). Finally, this Court previously determined that even an eight month

ORDER
C24-0907-JCC
PAGE - 4

gap was "too remote to infer causality." *Ellorin v. Applied Finishing, Inc.*, 996 F. Supp. 2d 1070, 1087 (W.D. Wash. 2014).

Here, Plaintiff fails to demonstrate any temporal proximity between when she filed her claim and when Defendant terminated her. To the contrary, Plaintiff's allegations demonstrate an almost 40-month delay between when she first filed her workers' compensation claim and when Defendant ultimately terminated her. (*See* Dkt. No. 22 at 6, 8) (Plaintiff filed her claim in March 2018; Defendant terminated Plaintiff in June 2021). As such, even if Plaintiff satisfies the rebuttable presumption on its face, the Court cannot reasonably infer causality where there was a 40-month delay between the protected activity and the alleged adverse employment action. Plaintiff therefore fails to establish the rebuttable presumption and fails to satisfy the causation element. The Court DISMISSES Plaintiff's common law retaliation claim.

### C. Failure to Accommodate Under WLAD

Defendant next moves to dismiss Plaintiff's failure to accommodate claim. (Dkt. No. 25 at 8.) Under the WLAD, a failure to accommodate claim requires the plaintiff to allege four elements: (1) the plaintiff suffered from a disability; (2) the plaintiff was qualified to do the job at issue; (3) the plaintiff gave their employer notice of the disability; and (4) upon notice, the employer failed to reasonably accommodate that disability. *See Bell v. Boeing Company*, 599 F. Supp. 3d 1052, 1069 (W.D. Wash. 2022) (citing *LaRose v. King Cnty.*, 437 P.3d 701, 721 (Wash. Ct. App. 2019)).

Defendant argues that Plaintiff's second attempt at pleading failure to accommodate suffers from the same deficiencies as the first attempt. (Dkt. No. 25 at 9.) Once again, the Court agrees. As in her prior complaint, Plaintiff fails to sufficiently plead the final element—that, upon notice, Defendant failed to reasonably accommodate her disability. As before, Plaintiff merely states that Defendant "failed to accommodate Plaintiff's physical limitation by failing to engage in the interactive process with her and by terminating her for having a disability." (Dkt. No. 22 at 12.) And as before, Plaintiff does not provide any indication of *how* Defendant failed to

accommodate her—that is, she does not allege any facts to suggest that the accommodation Defendant provided her (i.e., "light-duty office tasks") was unreasonable, inadequate, or insufficient.

In fact, Plaintiff continues to allege that she filed a worker's compensation claim and went on medical leave in March 2018 (thereby giving Defendant notice of her disability), and that, upon her return from medical leave, Defendant (a) offered her an employment letter "outlining accommodations for her physical restrictions" and (b) assigned her to perform "light-duty office tasks" in response to Plaintiff's request for accommodation. (Dkt. No. 22 at 6.) Even more tellingly, Plaintiff *admits* that "Belfor accommodated Ms. Wright . . . for nearly three years, even placing other people's responsibilities in her hands," and cites to the FAC. (Dkt. No. 26 at 5.) None of this suggests that Defendant failed to accommodate Plaintiff. To the contrary, it shows that Defendant's accommodations worked exceedingly well for Plaintiff, so much so that Plaintiff continued to work for Defendant for several years without incident *and*, during that time, Defendant felt comfortable entrusting Plaintiff with additional responsibilities. *See Gamble v. City of Seattle*, 431 P.3d 1091, 1095 (Wash. Ct. App. 2018) (plaintiff failed to establish prima facie failure to accommodate claim where the employer did not deny her request for accommodation but in fact gave her one, and plaintiff returned to work the following week "without incident").

Nevertheless, Plaintiff argues that she has sufficiently pled the final element because she alleges that Defendant accommodated her "until it determined that she was an inconvenience, then it terminated her." (Dkt. No. 26 at 5.) In other words, Plaintiff's entire failure to accommodate claim is premised on the fact that Defendant terminated her for having a disability. (*See* Dkt. No. 22 at 8, 12; *see also* Dkt. No. 26 at 5.) This fact alone does *not* form the basis of a failure to accommodate claim. To be sure, if true, as the Court is required to presume at this stage, then it is certainly problematic behavior. But a failure to accommodate claim ultimately depends on whether the employer reasonably accommodated the employee upon notice of the

employee's disability, and Plaintiff's own allegations suggest that Defendant provided Plaintiff with more than reasonable accommodation for several years prior to her termination. (*See* Dkt. No. 22 at 6.) Instead, and if anything, Plaintiff appears to conflate her failure to accommodate claim with, say, claims of discrimination or retaliatory discharge—both of which she alleges separately (and for which Defendant does not seek dismissal). (*See* Dkt. No. 22 at 9, 11.) The Court therefore DISMISSES Plaintiff's failure to accommodate claim.

## III.  CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss (Dkt. No. 25) is GRANTED. Counts I and V of Plaintiff's FAC are DISMISSED with prejudice.[2]

DATED this 20th day of November 2024.

*[signature: John C. Coughenour]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[2] Given Plaintiff's multiple attempts to cure the pleading deficiencies associated with these claims, it appears that leave for further amendment would be futile. *See Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018).